IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BARRY AARON                                                                                              PLAINTIFF

v.                               Civil No. 6:15-CV-06073-PKH-MEF

MARSHALL DALE REED, DARYL GOLDEN, FLOYD MCHAN, LT. MCGEE, SGT. COOK, OFFICER ELKINS, and OFFICER NITZKE                 DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Barry Aaron, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC"), Ouachita River Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable P. K. Holmes, III, Chief United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Motion for Summary Judgment by Defendants Reed, Golden, McHan, McGee, Cook, and Elkins.[1] (Doc. 30) After careful consideration, the undersigned makes the following Report and Recommendation.

**I. BACKGROUND**

Plaintiff filed his Complaint on July 17, 2015. (Doc. 1) Plaintiff alleges he was assaulted by inmate Bowden just after midnight on November 24, 2014. He required reconstructive surgery on his right eye-socket at the University of Arkansas for Medical Sciences (UAMS). (Doc. No. 1,

---

[1] The summons sent to Nitzke's last known address was returned unexecuted on November 13, 2015. The claims against him will therefore not be addressed.

pp. 4-6) Plaintiff has a heart condition, and he has a pacemaker. (Doc. 30-10, p. 23) Based on his Complaint, grievances, and deposition testimony, Defendant Elkins was present in Charlie Barracks the night of the assault. Plaintiff's cellmates Snow and Bowden were talking, and Plaintiff asked them to be quiet. (Doc. 1, p. 4) Bowden became verbally aggressive, cursing and threatening to beat Plaintiff up. Defendant Elkins watched this and did not call for backup or intervene, despite knowing that Bowden had assaulted another older inmate with a heart condition (Kristantis), who had died as a result. (Doc. 1, p. 5) Plaintiff alleges he asked Officer Elkins to remove inmate Bowden before he attacked him. He alleges Bowden then walked up and down the aisle and Elkins just watched him. Bowden then attacked him, and Officer Elkins then called Sergeant Cook for backup. (Doc. 1, p. 5) He alleges Elkins did not call "all available officers," but that this was done by Cook. (Doc. 1, p. 5)

Plaintiff alleges security is inadequate in the open barracks, with single officers tasked to supervise two separate barracks. He alleges each of the barracks currently holds 46 inmates, so one officer is overseeing 92 inmates in the open barracks. He alleges walk-throughs are not performed according to policy, and the safety and well-being of aging and medically-challenged inmates is at risk due to lax security measures. (Doc. 1, pp. 6-9)

*Defendant Elkins*

Plaintiff alleges Officer Elkins failed to protect him because she knew inmate Bowden's history and did nothing to defuse the situation or stop it once it escalated to assault.[2] (Docs. 1, pp.

---

[2] At his deposition, Plaintiff testified she had actually tried to arrange a "hit" on him, both with this incident and on an earlier occasion in Alpha Barracks using another inmate. He alleged this other inmate tried to say Plaintiff was in the ADC for the rape of a child. (Doc. 30-10, pp. 47-50) This claim was not included in his Complaint, and is therefore not addressed.

4-5; 30-10, p. 26)  Plaintiff also alleges Elkins filed the disciplinary against him for the November 24, 2014, incident in retaliation for him filing a grievance against her over her handling of the assault by Bowden.  (Doc. 1, p. 7)

*Defendant Cook*

In his Complaint, Plaintiff alleges Sergeant Cook wrote a disciplinary against him for out-of-place assignment, but that Cook told him the disciplinary would "go away" if he dropped a grievance against Officer Nitzke for an issue involving an inventory of Plaintiff's belongings - and missing personal property - which occurred while Plaintiff was at UAMS.  Plaintiff alleges he had no choice but to tear up the grievance against Nitzke.  Plaintiff alleges this interfered with his right to access to courts.  (Doc. 1, pp. 7-8)  Plaintiff also alleges Sergeant Cook failed to protect him from the assault.  This claim was based on the ADC policy of assigning one officer to supervise two barracks.  (Docs. 1, p. 7)

*Defendants Reed, Golden, McHan, and McGee*

Plaintiff alleges these Defendants failed to protect him because they knew that only one officer was assigned to supervise two barracks, and this placed him in a life and death situation.  (Doc. 1, p. 7)

Plaintiff proceeds against all Defendants in both their personal and official capacities.  (Doc. 1, p. 4)  Plaintiff seeks compensatory and punitive damages; an injunction ordering the ADC to immediately assign a correctional officer to supervise each section; and, expungement of his disciplinary charge.  (Doc. 1, pp. 9-11)

*Summary Judgment Proceedings*

Defendants filed their Summary Judgment Motion on July 29, 2016.  (Doc. 30)  Plaintiff filed a written response to the Summary Judgment Motion, a Statement of Facts, and an Answer to Defendants Statement of Facts on August 18, 2016.  (Docs. 35, 36, 37)  Plaintiff filed proposed exhibits on August 24, 2016.  (Doc. 38)  Defendants filed a Reply to Plaintiff's Response on August 25, 2016.  (Doc. 39)  Medical records from UAMS were received on November 2, 2016.

A Summary Judgment hearing was held on November 15, 2016, to permit Plaintiff to respond orally to the Motion.  Plaintiff appeared via video conference.  (Doc. 50)

At the hearing, Plaintiff agreed with the Court's summary of his claims, and he testified as follows.

Regarding the sovereign immunity issue, Plaintiff testified the Defendants individually implemented the ADC policy of only having one officer in the barracks, and this policy was unconstitutional.  Plaintiff cited several cases to support his point.  The Court reminded Plaintiff that there was no dispute that the official capacity claims against the Defendants were against the State of Arkansas.

Regarding the *respondeat superior* issue as to Defendants Reed, Golden, McHan, and McGee, Plaintiff testified that the Defendants were state actors, not supervisors, and they were supposed to provide adequate security.  Plaintiff testified there had not been adequate security for years, and that inmates have to look out for other inmates.  He stated the Defendants put people wherever they wanted, that it is disruptive, and that is why he is suing these people.  Plaintiff testified he believed the ADC was already in violation of a federal court order.  He confirmed that his claim was that there are not enough officers for too large an area.

Plaintiff then testified as to his failure to protect claims. Plaintiff testified both the day and night officers had knowledge of a threat of harm to him from Bowden. He referenced his Exhibit C in Document 35, being an affidavit from inmate Doug King. This affidavit is dated December 18, 2015. Inmate King stated he was on his bed in Charlie barracks when he heard inmates Snow and Bowden talking about Aaron in the bathroom. Snow stated someone needed to "beat the shit" out of Aaron, and Bowden said he was going to take care of it. King told Aaron what was said, and they both told Officer Nitzke. Nitzke told them he would watch for it and put a stop to it before it happened. (Doc. 35, p. 20)

Plaintiff testified that Officer Elkins did not insert herself between two fighting inmates the night of the assault. He referenced his Exhibit E from inmate Larry Davis. This affidavit is dated May 23, 2016. Inmate Davis states that he witnessed Elkins standing at the wall at C-24 in Charlie barracks on the night of the assault. He saw Bowden knock Aaron to the floor between C-31 and C-32. Bowden then walked up to Elkins. Inmate Aaron said something, and then Bowden came back and beat him in the face. Elkins then walked off. (Doc. 38-5)

Plaintiff testified that the assault began when there was no officer present. He noted a long history of security concerns in open barracks. He testified that if you are in the hallway or the hub, you cannot see in the barracks. He testified that if you are in the doorway, the cubicles block the view. Plaintiff referred to an interrogatory answer by Elkins. (Doc. 35, pp. 21-22)

Regarding his retaliatory discipline claim against Elkins, Plaintiff testified he was put in the same barracks when he came back from UAMS. Another officer told him Elkins did not write a disciplinary against him. But when he filed the grievance against her for the assault, then he got served with the disciplinary for that night. The officer who told him this no longer works with the ADC. Plaintiff agreed that the timing of the disciplinary is key to his claim.

5

Plaintiff testified Sergeant Cook allowed Officer Nitzke to get away with not doing an inventory of Plaintiff's belongings when he was taken to UAMS, and that he was missing some personal property upon his return. He testified he did not file a grievance against Cook for this because he was afraid "By-the-Book Cook" would enter a disciplinary into the computer against him. Plaintiff testified his first grievance against Nitzke was filed before Cook made his threat.

Plaintiff testified he provided no additional service address for Nitzke because the ADC refused to give him any information.

Regarding qualified immunity, Plaintiff referenced his Document 35, paragraph 17, and the affidavit from inmate Doug King. This paragraph states there was a clearly established constitutional right to have adequate security in the barracks, and Defendants were aware of that right. Further, Plaintiff asserts that Defendants were made aware of the potential for harm and chose to disregard it. (Doc. 35, p. 4)

Defense counsel was then permitted to question Plaintiff. Plaintiff confirmed he told Officer Nitzke about the threat to him from inmate Bowden. Plaintiff testified he did not speak to Officer Elkins about it, because she entered when he was sound asleep. He testified it was the barracks officer's duty to inform her. Plaintiff testified "he had no idea" if the barracks officer informed Elkins of the threat from Bowden. Plaintiff testified he had no evidence to show that Elkins knew of the threat from Bowden.

Plaintiff testified he did not personally speak with Sergeant Cook about the threat from Bowden. Plaintiff did state Officer Nitzke told him that he would tell Cook. Plaintiff testified he did not know if Nitzke told Cook anything about Bowden.

Plaintiff testified he did not know how long the incident lasted. He had no way of knowing

without the video. Plaintiff stated he has been told the video of the incident no longer exists, even though someone also told him all altercations are downloaded. Plaintiff was asked what he recalled. Plaintiff looked at his paperwork. The Court prompted Plaintiff to try to recollect, not just look at his paperwork. Plaintiff testified he did not remember, but from the photos of his face it was long enough to do some damage. Plaintiff agreed it could have been only seconds. He further stated other inmates told him it was a good 5 to 8 or 9 minutes. Plaintiff agreed he was knocked out. When he came to, Bowden was on him. Plaintiff then stated he was in the early stages of dementia, but that he had not been diagnosed with this by a physician.

Plaintiff was asked if he had anything else he wished to bring to the Court's attention. Plaintiff stated there were disputed facts which the jury needs to take a look at, such as the different stories Officer Elkins told. He claimed that "if they dig a little deeper" they would find the video of the incident as well. He testified Elkins tried to stage the same thing against him in Golf barracks. He testified the video would show negligence on the part of the ADC. Plaintiff also noted that ADC policy permits force to be used to gain control, referring to section 409, and that this policy does not say they are supposed to stand back and watch someone get beaten senseless.

Plaintiff further testified the open barracks are not safe, and that the ADC was ordered do something about it a long time ago. At any given time, he said they are 25 to 30 people short on shift; that they had to close the patios because they do not have enough staff; and, that the situation needs some looking into because people are dying and getting hurt. "We inmates need some help."

Defense counsel was permitted to respond. Counsel stated the burden is heavier on Plaintiff at this point – that he must come forth with facts. Counsel further stated that Plaintiff has repeatedly claimed that Elkins testimony was inconsistent; however, it is an undisputed fact by Plainitff's own testimony that Elkins was in the barracks that night. Defense counsel argued that

7

there is case law that having only one guard for two barracks is adequate security, citing *Finney v. Mabrey*, 546 F. Supp. 628 (E. D. Ark. Aug. 20, 1982).

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the non-moving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Defendants argue summary judgment should be awarded in their favor on the following grounds: (1) sovereign immunity bars Plaintiff's claims for monetary damages against Defendants in their official capacity; (2) Plaintiff's claims against Defendants Reed, Golden, McHan, and

McGee are barred by *respondeat superior,* and Plaintiff further lacked standing to challenge the ADC staffing policy; (3) Plaintiff's failure to protect claim must fail because there is no evidence of deliberate indifference on the part of Elkins or Cook; (4) Plaintiff's claim of retaliatory discipline against Elkins fails as a matter of law; (5) Plaintiff's claim against Cook for a First Amendment violation fails because, even if true, it did not interfere with Plaintiff's access to the courts; (6) Plaintiff's claim against Nitzke for failure to inventory his property must be dismissed for lack of service; and, (7) Defendants are entitled to qualified immunity, as this was a surprise attack. (Doc. 31)

**A. Sovereign Immunity – Official Capacity Claims**

Defendants are all employees of the Arkansas Department of Correction, a state agency. An official capacity claim against an ADC employee is essentially a claim against the State of Arkansas. "The Eleventh Amendment bars suits against a State by citizens of that same State in federal court." *Williams v. Missouri,* 973 F.2d 599, 599-600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "This bar exists whether the relief sought is legal or equitable." *Id.* (*quoting Papasan*, 478 U.S. at 276). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (*citing Quern v. Jordan,* 440 U.S. 332, 342 (1979)). The State of Arkansas and its agencies have not consented to suit in federal court. (Doc. 31, p. 5) Plaintiff's official capacity claims for monetary damages against the State of Arkansas are barred by sovereign immunity.

**B. Failure to Protect Claims**

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir.

1998). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims' safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claims, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) show the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong; instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

There is no dispute that Plaintiff was seriously injured by Bowden in the assault. Defendants argue summary judgment is appropriate because neither prong of the test was met. Instead, Defendants contend this was a surprise attack. Plaintiff bases his failure to protect claims on two sources of information. The first is the alleged knowledge of the intended assault by inmate Bowden. The second is the alleged staffing inadequacy of using one officer to supervise two

separate open barracks with approximately 50 inmates per barracks. As discussed below, Plaintiff has failed to provide sufficient evidence to show standing for the ADC policy claim, or to meet either prong of the test for this specific assault.

### 1. *Respondeat Superior* – Reed, Golden, McHan, and McGee

Defendants argue Plaintiff's failure to protect claim against Reed, Golden, McHan, and Cook are barred by the doctrine of *respondeat superior* because they were not personally involved in handling the altercation between Bowden and Plaintiff. Plaintiff's claim against Defendant McGee is likewise barred because his involvement was limited to escorting Plaintiff to the hospital unit for treatment. (Doc. 31, p. 6)

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Defendants cannot be held liable merely because they hold supervisory positions at the ADC or an ADC unit.

At the hearing, Plaintiff testified these Defendants caused his assault because they were state actors, not because they were supervisors, and that they were supposed to provide adequate

security. In his Complaint, Plaintiff stated he filed Grievance OR-14-01402 because "Wardens Reed and Golden, Major McHan, Lt. McGee, and duty Sgt. Cook failed to insure [sic] adequate supervision of Charlie barracks, which allowed the attack on me to take place." (Doc. 1, p. 6) In his deposition, he testified he was suing Reed because "he is the one that sanctioned this unwritten rule to allow this to happen." He testified he was suing Golden, McGee and McHan for the "same reason" (Doc. 31, p. 7); and, that he was suing McGee not due to his involvement with his medical care, but because he was the shift lieutenant and in the chain of command. (Doc. 30-10, p. 31)

Based on Plaintiff's Complaint, and his testimony at both hearing and deposition, it is clear Defendants Reed, Golden, McHan and McGee had no personal involvement with Plaintiff's assault and were sued based solely on their supervisory positions. Plaintiff's failure to protect claim against them based on this specific assault is therefore barred by the doctrine of *respondeat superior*.

**2. Standing – Open Barracks Security Policy – Reed, Golden, McHan, and McGee**

Plaintiff alleges these Defendants are also liable for his assault based on the use of one guard to supervise two barracks. Plaintiff claims this is so inadequate as to be objectively unsafe. Plaintiff further alleges Defendants knew it was unsafe, thus satisfying the second prong of the test. Defendants counter by arguing that Plaintiff does not have standing to bring claims based on lack of personnel in the barracks. It is undisputed both that Officer Elkins was physically present in the barracks at the time of the assault, and that Sergeant Cook was approximately 150 feet away and arrived as backup in under two minutes. Thus, Plaintiff was not personally harmed as a result of allegedly insufficient staffing, and he cannot bring claims on behalf of "aging and physically challenged inmates." (Doc. 31, pp. 7-8)

It is well-established that § 1983 does not confer standing because it does not confer any substantive rights. *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000). "If a plaintiff has not suffered an injury [due to the conduct of the defendant], there is no standing and the court is without jurisdiction to consider the action." *Id.* at 934; *see also Smith v. Unknown*, No. 06-CV-1046, 2006 WL 3248270, at *2 (W.D. Ark. Nov. 7, 2006) (inmate did not have standing to bring claims on behalf of other inmates) (citing *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991)).

In this case, the conduct complained of is the security staffing policy of the ADC. Plaintiff alleges the one-officer-for-two-barracks policy results in one barracks being completely unsupervised when the officer is in the other barracks. (Doc. 1, p. 7) Plaintiff testified in his deposition that he would not have been harmed if there had been one officer assigned to each barracks and a sergeant in the middle. (Doc. 30-10, p. 30) Plaintiff testified at his hearing that his complaint was that there are not enough officers for too large an area. As part of his request for relief, Plaintiff requests a correctional officer be immediately assigned to each of the Alphabet Barracks on all four shifts. (Doc. 1, p. 10)

Plaintiff's standing for a claim of failure to protect based on the ADC staffing policy depends, therefore, on whether an officer was physically present in the barracks when the assault started. Plaintiff testified at his hearing, and stated in his response to the summary judgment motion, that no officer was present when the assault started. (Doc. 35, p. 5) This point appears to be based on a statement by Officer Elkins in response to an interrogatory from Plaintiff. Specifically, Plaintiff points out that Officer Elkins, in her interrogatory answer, stated she did not do a security check upon arriving at Charlie barracks because she saw two inmates in an altercation. (Doc. 35, pp. 3, 21) Plaintiff argues this is contrary to her answer which states she and Bowden entered the barracks at the same time and she gave him a direct order to go to his

13

rack. (Doc. 35, pp. 3, 21) Plaintiff's reporting of these inconsistent answers by Elkins is correct.

The Plaintiff's own allegations, testimony, and witness statements, however, provide great detail as to the presence, actions, and inactions of Officer Elkins just prior to and during the assault. These include the following:

- In his Complaint, Plaintiff alleged he saw Elkins standing at rack C-24 when he was woken up by Snow and Bowden. (Doc. 1, p. 4)
- In his Complaint, Plaintiff alleged Elkins watched the altercation unfold into an assault. (Doc. 1, p. 5)
- In his grievance OR-14-0394, Plaintiff alleges Elkins heard the argument and came to the end of the row. Then Bowden began assaulting him. At no time did Elkins intervene or try to stop the beating. (Doc. 1 p. 15)
- In Plaintiff's affidavit attached to his Complaint, Plaintiff stated he saw Elkins leaning against the half wall and talking to another inmate when he woke up. She watched everything and Plaintiff asked her to remove Bowden before Plaintiff got hurt. (Doc. 1, p. 48)
- In Plaintiff's deposition, he testified he saw Elkins standing in the entryway and leaning against the wall. (Doc. 30-10, p. 17)
- In his deposition, Plaintiff testified Elkins did not walk down to Plaintiff's bed while Bowden was standing there. She looked straight at him and he asked her if she would get Bowden out of there before something happened. She did not, she just leaned against the wall and stared at him like she didn't hear anything. (Doc. 30-10, p. 20)
- In his deposition, Plaintiff testified Elkins didn't make an attempt to do anything. (Doc. 30-10, p. 24)
- In his deposition, Plaintiff testified Elkins made no attempt whatsoever to curb the issue that was escalating. Once it got out of hand, she did not make a move to stop anything. (Doc. 30-10, p. 26)
- In Plaintiff's written response to the Summary Judgment motion he stated "Elkins stood and watched the entire assault transpire, and did not make an attempt to intervene or stop the assault. (Doc. 35, p. 2) He refers to the affidavit of Tom Auldridge, which states there was a loud altercation and it was obvious that a fight was about to occur. "There was enough time to stop the violence if the officer had intervened or called for help. This didn't happen though." (Doc. 35, p. 9)

Based on this evidence, there is no reasonable dispute that Officer Elkins was in the Charlie barracks just prior to and during the assault by inmate Bowden. Plaintiff's own information places her within a few bunk rows of Plaintiff at that time. Plaintiff cannot, therefore, claim he was

harmed by a staffing policy which resulted in no officer being in the barracks just prior to or during the assault. Because he was not personally harmed by the ADC's staffing policy, he lacks standing to challenge it. The Court does wish to note, however, that it is not unsympathetic to Plaintiff's point about insufficient staffing posing a danger to inmates in open barracks. Indeed, the Court finds it questionable that one guard, tasked with supervising two open barracks housing approximately 90 inmates, constitutes adequate supervision. Further, the Eighth Circuit has evinced a willingness to examine open barracks policies as well. *See e.g. Krein v. Norris*, 309 F.3d 487 (8th Cir. 2009). Without standing, however, Plaintiff cannot use this incident to challenge the staffing policy.

### 3. Failure to Protect – Cook

Plaintiff alleges Sergeant Cook failed to protect him from the assault based on the staffing policy, and that he failed to check on Plaintiff after the assault. (Doc. 1, pp. 5, 7) Defendants argue Cook was not present in the barracks when the altercation or assault began, and therefore had no subjective knowledge of an excessive risk of harm. (Doc. 31, p. 10) In his affidavit, Cook states he quickly left his post between the Echo and Fox barracks when he received Elkins' call for help. He was approximately 150 feet away from the Charlie barracks, and he arrived in two minutes or less. By the time he arrived, the assault was over. He called for all available personnel and handcuffed Bowden. (Doc. 3, p. 11) He did not have any direct interaction with Plaintiff on the night of the assault. (Doc. 30-2, p. 3)

Plaintiff's use of the ADC policy to support his claims has already been addressed above. Cook could not be responsible for failing to protect based on specific indicia about this assault when he was not present until it was over. Plaintiff provided no allegation or evidence to show Cook had any involvement with the incident until it was finished and Cook secured Bowden.

Finally, Plaintiff's claim that he did not check on him is without merit, as Cook secured Bowden to prevent any further harm. Plaintiff admitted in his Complaint that Cook arrived and put out a call for all available officers to come to Charlie barracks, which resulted in McGee arriving to help Plaintiff to the hospital unit. Plainitff's claim, therefore, fails the subjective prong of the deliberate indifference test as against Sergeant Cook.

   **4. Failure to Protect – Elkins**

Plaintiff alleges Officer Elkins failed to protect him from Bowden's attack. Many of his allegations concerning Elkins are detailed above in the discussion on standing, including the complaint that she did not insert herself between two fighting inmates. In his Complaint, he additionally commented that Elkins knew inmate Bowden had assaulted and killed another older inmate with a heart condition in Alpha barracks. (Doc. 1, p. 5) Plaintiff alleges Elkins did not call for help until the assault started. (Doc. 1, p. 5) In his response to the summary judgment motion, Plaintiff alleges both he and inmate King had warned staff of the conversation between inmates Snow and Bowden concerning an impending assault by Bowden. (Doc. 35, pp. 3, 20)

Defendants argue that prior to this altercation, the objective prong of the test had not been met. Bowden and Plaintiff were not on each other's enemy lists, and there had been no prior altercation. As this was a surprise attack, Defendants contend they were not deliberately indifferent in failing to prevent it. (Doc. 31, p. 19) Defendants further argue that ADC officers are trained not to insert themselves between fighting inmates. (Doc. 31, p. 11) Instead, they are to wait for back-up to arrive, as Elkins did. (Doc. 30-2, p. 3)

Plaintiff's allegations are contradicted by his own testimony. In his deposition, Plaintiff admitted he "didn't have a clue" who inmate Bowden was before the assault. (Doc. 30-10, pp. 11,

17) He had not heard anything about inmate Bowden, other than he was living in the barracks, and just that "he was my cellie … he was the man who was sleeping in the same cubicle." (Doc. 30-10, pp. 11, 17)  At his hearing, Plaintiff testified he and inmate King told Officer Nitzke that King had heard inmates Snow and Bowden plotting an assault against Plaintiff. He also testified, however, that he did not tell either Sergeant Cook or Officer Elkins this information. He further testified he had no idea if Nitzke passed this information on to Cook or Elkins. Plaintiff presented no evidence to show that Elkins actually knew of this plot between inmates Snow and Bowden to assault him.

Because Plaintiff had no evidence to show that Elkins actually knew of the plot, she did not disregard a substantial risk of harm to Plaintiff. Even when considering the record in the light most favorable to him, Plaintiff has not provided sufficient evidence to satisfy either prong of the deliberate indifference test against Officer Elkins.

**C. Retaliatory Discipline – Elkins**

Plaintiff alleges Officer Elkins did not file a disciplinary action against him for the night of the assault until he filed a grievance against her for her role in the incident. He testified at his hearing that an officer told him she had not filed one when he came back from UAMS. Defendants argue Plaintiff's retaliation claim fails as a matter of law because he pleaded guilty to two of the four disciplinary charges. (Doc. 31, p. 14)  Defendant attached the disciplinary report for the incident, showing Plaintiff's two guilty pleas. (Doc. 30-3)

"[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008). As long as there is "some evidence" the inmate actually committed a rule violation, then a retaliation claim will fail. *Id.* Because Plaintiff pleaded guilty to two of the charges, there is "some evidence"

he actually violated a prison rule, and his retaliation claim must fail as a matter of law.

### D. Denial of Access to Courts – Cook

Plaintiff alleges Sergeant Cook interfered with his First Amendment access to courts. (Doc. 31, p. 15) This claim is based on Plaintiff's allegations that Cook threatened to issue a disciplinary charge for out-of-place assignment against him unless he tore up a grievance against Officer Nitzke. (Doc. 31, p. 15) Defendants argue Plaintiff failed to exhaust his administrative remedies against Cook for this claim because he did not file a grievance about it. (Doc. 31, p. 16)

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Defendants provided evidence that Plaintiff did not file a grievance against Sergeant Cook on this issue in the form of an affidavit from the Inmate Grievance Coordinator for the ADC. She

reviewed Plaintiff's Grievance Appeal file and found no grievances were exhausted on this topic prior to the filing of this lawsuit. She did note that Plaintiff filed OR-14-01422 against Officer Nitzke for allowing inmate Bowden to be out-of-place assignment and resulting in the assault. (Doc. 30-8) Plaintiff provided copies of several grievances with his Complaint, including OR-14-01422. (Doc. 1, pp. 15-25) None of these grievances was against Sergeant Cook on this issue. At his hearing, Plaintiff testified he did not file a grievance against Cook for a First Amendment violation because he was afraid he would put a disciplinary into the computer against him if he did. This is not a reason which would excuse Plaintiff from the exhaustion requirement. It is not Plaintiff's subjective belief regarding whether he had any administrative remedies remaining that should be considered, but whether any administrative remedies were in fact still available. *See Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (the court should not consider the inmate's subjective beliefs, logical or otherwise, in determining whether administrative procedures are available). The Court also notes that Plaintiff's alleged fear of Sergeant Cook did not prevent him from filing either this lawsuit against him or Grievance OR-14-01402.

Based on this evidence, Plaintiff failed to exhaust his administrative remedies against Sergeant Cook for denial of access to courts.

**E. Nitzke**

Plaintiff testified the ADC has refused to give him Officer Nitzke's address. Nitzke is no longer employed at the ADC. (Doc. 14) Defendants provided Nitzke's last known address to the Marshall's service, and service at that address was unsuccessful. It is Plaintiff's responsibility to provide the Court with an address for proper service on defendants. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). It has been over a year since Nitzke's summons was returned unexecuted. Plaintiff has not provided the Court with any additional addresses to use in serving

Nitzke.

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (Doc. 30) be **GRANTED**, and that Plaintiff's Complaint be dismissed against all remaining parties with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of January, 2017.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE